

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Gib Gilchrist, President
Agricultural and Mechanical College of Texas
College Station, Texas

Dear Sir:

Opinion No. 0-6942

Re: Whether or not the A. & M.
College may legally use its
local funds as a revolving
fund for the payment of la-
borers, and submit payrolls
in favor of the College to
the Comptroller of Public Ac-
counts drawn against the ap-
propriation made from the Gen-
eral Revenue Fund to reimburse
the College.

We are in receipt of your letter requesting an
opinion from this department as follows:

"We are submitting herewith two questions
on which we would like to have a ruling from you.

"1. Can the A. & M. College legally use
its local funds (referred to in Subsection (3)
of House Bill No. 173, Acts of the Regular Ses-
sion of the Forty-Ninth Legislature, known as
the Educational Appropriation Bill) as a 're-
volving fund' for the payment of laborers and
submit payrolls in favor of the College to the
Comptroller of Public Accounts drawn against
the appropriations made in said Act from the
General Revenue and other funds, to reimburse
the College?

"2. Can the Comptroller of Public Accounts
legally issue warrants in favor of the College
in payment of payrolls drawn against the appro-
priations from the General Revenue Fund and other
funds to reimburse the College for payments made
by using its local funds as a revolving fund?

"This ruling is requested for the reason that
we are having considerable difficulty in employ-
ing laborers paid from State Appropriations on
account of the delay in making their earnings
available.  Under the most favorable conditions
they do not receive their wages for a week or
more after they are due.  For many years prior
to the fiscal year 1931-32 the College paid its
laborers as set forth in Question No. 1 above
and was reimbursed as set forth in Question No.
2.  This method of payment was authorized by at
least one Legislature, namely the Fortieth, as
set forth in Chapter No. 101 of the General and
Special Laws of its First Called Session.

"We have been authorized by the State Audit-
or to say to you that he has full information on
this subject and perhaps can assist you in know-
ing all of the facts and the difficulties under
which we have to operate at present by making
all payments from State Appropriations directly
to the payee."

Item No. 410 of the current appropriation for A. &
M. College contained in House Bill No. 173, Chapter 377, Acts
of the 49th Legislature, appropriates $129,036.00 for the
current fiscal year for "general maintenance, including sup-
plies, material, labor, equipment, traveling and contingent
expenses."

Subsections 3 and 4 of the general provisions ap-
pended to House Bill No. 173 are as follows:

"Subsection (3).  Institutional Receipts.
No property belonging to any of the institutions
herein provided for, or any agency thereof, shall
be sold or disposed of without the consent of its
governing board, and all proceeds from the sale
of such property, from labor performed, from
the sale of materials, crops and supplies, from
fees, and any and all other receipts shall be-
come and are hereby appropriated as maintenance
or contingent fund to be expended under the
direction and with the approval of the govern-
ing board having jurisdiction.  Said governing
boards are authorized to use out of the proceeds

Honorable Gib Gilchrist, page 3

of said receipts and funds, in accordance with the provisions of this Act, such amounts as they shall deem necessary for the support, maintenance, operation and improvements of said institutions. Any balances remaining to the credit of any of said institutional local funds at said institutions or in the State Treasury at the end of any fiscal year are hereby reappropriated for the above-mentioned purposes for the succeeding year.

"Subsection (4). Local Depositories. The governing boards of the respective institutions for which appropriations are made in this Act are hereby authorized to select depository banks for the safekeeping of local funds collected by said institutions. The Boards shall require said depository banks to furnish adequate surety bonds or securities to be posted for the assurance of safety of such deposits. The depository bank or banks so selected are hereby authorized to pledge their securities for assurance of safety for such funds. All local funds shall be deposited intact in these depositories within five (5) days from date of collection. The governing boards may require the depository so designated and selected to pay interest on deposits at a rate to be agreed upon by said depositories and said boards.

"It is hereby declared the legislative intent that the governing boards and heads of the several State institutions of higher learning shall not borrow money from any person, firm or corporation to be repaid out of local funds, other than as specifically authorized by legislative enactment."

In our Opinion No. O-4111, this department had under consideration a question in many respects similar to the problem which you have submitted. We quote excerpts from said opinion as follows:

"'This office desires your opinion as to whether or not any of the three following transactions are contrary to law:

Honorable Gib Gilchrist, page 4

"'....

"'Case No. 3. A General Revenue Warrant of the State was issued to an employee for her October salary. Although she resigned on October 15th, the warrant was written to her for the entire month, and she discounted it, keeping one-half (1/2) for herself and the other one-half (1/2) was paid by the institutional cashier to another employee, who supposedly replaced the original employee.'

"....

"An appropriation is the setting apart from the public revenues of a certain sum of money for a specified purpose, in such manner that the executive officers of the government are authorized to apply that money, and no more, to that purpose, and to no other. Words and Phrases, Permanent Edition, Volume 3, Pages 819 et seq.; State v. Moore, 69 N.W. 373, 376, 50 Neb. 88, 61 Amer. State Rep. 538; McCombs v. Dallas County (Civ. App.) 136 S.W. (2d) 975.

"Every appropriation has the effect of creating a special fund, which is to be expended only for the purpose for which the appropriation was made. To draw a warrant against the appropriation, ostensibly to apply the funds to the purpose for which they are provided, and then to deposit the money to the credit of the local fund of the college, is to apply the money appropriated to a purpose for which it was not authorized by the Legislature. It follows that each of the first two fact situations set out in your letter present instances of unauthorized and therefore illegal diversions of the public moneys involved.

"With respect to the third fact situation presented in your letter, you are advised that warrants against the appropriations made to pay the salaries of employees of the various departments and institutions of learning of this State are in no instance to be drawn in favor of the department head or school authority; but in each case the warrant against the appropriation is to be drawn in favor of the person rendering the

Honorable Gib Gilchrist, page 5

service for which the appropriation is provided,
and for no greater amount than is actually due
such person. The appropriation provides author-
ity for the department or school head to enter
into contracts with reference thereto, but the
money provided is not to be drawn from the Treas-
ury by the department or school head and by him
dispersed in cash to the employees; the claim of
the employee for payment from the appropriation
is to be presented to the Comptroller on the in-
stitutional payroll, certified as correct by the
school head, and the warrant is to be drawn in
favor of the employee himself. See Articles
4344, 4350, 4355, 4356, 4358 and 4359, Revised
Civil Statutes, 1925.

"It follows that in the third instance given
in your letter, the warrant should have been
drawn in favor of the employee, as payee there-
of, only for the amount actually due her as sal-
ary, to wit, salary for one-half month, and a
claim should have been presented to the Comptrol-
ler for the issuance of a separate warrant against
the same appropriation for the amount of salary
due the employee who replaced her. The action
of the school authorities in certifying the claim
for the issuance of a warrant for an entire
months's salary to the original employee, when
only one-half months' salary was due to her, and
in delivering the warrant to the original em-
ployee for the full month's salary, procuring
cash from the original employee, the payee of the
warrant, for the one-half months' salary not due
her, and paying over the cash direct to the em-
ployee who replaced the original employee, was
without authority of law, and therefore illegal."

We think the language of the above opinion is ap-
plicable in this instance. We find no provision in the stat-
utes or in the appropriation bill which would authorize the
payment of labor claims in the manner that you suggest.

We note the statement in your letter that the meth-
od suggested by you was authorized by the Legislature in 1927.
We think, however, that the continuous failure of the Legis-
lature since that time to enact similar provisions in subse-
quent appropriations indicates that it did not want the practice

Honorable Gib Gilchrist, page 6

continued. We think such action, or rather inaction, on the part of the Legislature is particularly significant in view of the fact that for the past several years, the departmental construction on the part of the Comptroller has been that payroll warrants must be made payable to the employees.

Accordingly, we answer your inquiry by stating that there is no present legal authority for following the payroll method suggested in your letter.

Trusting that this sufficiently answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *J. Arthur Sandlin*
J. Arthur Sandlin
Assistant

JAS:db

APPROVED SEP 20, 1945